1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RHIANNON SALAZAR,                          No.  2:19-cv-2557 DB

12              Plaintiff,

13       v.                                      ORDER

14   KILOLO KIJAKAZI, Acting
     Commissioner of Social Security[1],
15

16              Defendant.

17

18          This social security action was submitted to the court without oral argument for ruling on

19   plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2]

20   For the reasons explained below, plaintiff's motion is granted, defendant's motion is denied, the

21   decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is

22   remanded for further proceedings consistent with this order.

23

24   _____

25   [1] After the filing of this action Kilolo Kijakazi was appointed Acting Commissioner of Social
     Security and has, therefore, been substituted as the defendant.  See 42 U.S.C. § 405(g) (referring
26   to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the
     Commissioner shall, in his official capacity, be the proper defendant").
27

28   [2] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant
     to 28 U.S.C. § 636(c).  (See ECF No. 16.)

                                                   1

# PROCEDURAL BACKGROUND

On September 20, 2016, plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), and on November 10, 2016, filed an application for Child's Insurance Benefits under Title II of the Act, alleging disability beginning on January 22, 2013. (Transcript ("Tr.") at 15, 222-29.) Plaintiff's applications were denied initially and upon reconsideration. (Id. at 139-43, 147-51.)

Thereafter, plaintiff requested a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on November 20, 2018. (Id. at 53-79.) Plaintiff was represented by counsel and testified at the administrative hearing. (Id. at 53-55.) In a decision issued on December 12, 2018, the ALJ found that plaintiff was not disabled. (Id. at 24.)

The ALJ entered the following findings:

1. Born [in] 1995, the claimant had not attainted age 22 as of January 22, 2013, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. The claimant has not engaged in substantial gainful activity since January 22, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: major depressive disorder, bipolar disorder, anxiety disorder, schizoaffective disorder, and morbid obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). She can understand, remember and apply simple job instructions and maintain concentration, persistence, and pace for simple job tasks, with no public contact and no production or quota goals.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born [in] 1995 and was 18 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from January 22, 2013, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

(Id. at 17-24.)

On October 29, 2019, the Appeals Council denied plaintiff's request for review of the ALJ's December 12, 2018 decision.  (Id. at 1-5.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on December 19, 2019.  (ECF No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)).  If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm."  McCartey v. Massanari,  298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step process has been summarized as follows:

3

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's motion asserts the following three principal claims of error: (1) the ALJ failed to develop an adequate record regarding plaintiff's mental health limitations; (2) the ALJ erroneously rejected plaintiff's testimony; and (3) the ALJ failed to consider plaintiff's obesity.[3] (Pl.'s MSJ (ECF No. 15) at 6-16.[4])

### I. Mental Health Limitations

Plaintiff argues that the ALJ failed to adequately develop the record regarding plaintiff's mental health after rejecting the sole opinion "from a treating or examining source[.]" (Id. at 7.) Defendant argues that "the record was not ambiguous and it contained sufficient evidence for the ALJ to determine whether Plaintiff had disabling mental limitations." (Def.'s MSJ (ECF No. 17)

---

[3] The court has reordered plaintiff's claims for purposes of clarity and efficiency.

[4] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

1    at 8.)  The court agrees.  The record appears to unambiguously and sufficiently establish that

2    plaintiff suffered considerable limitations related to mental impairments.  The ALJ was only able

3    to reach a contrary conclusion as the result of errors.

4         In this regard, on February 9, 2017, Faye Branum a Physician's Assistant-Certified ("PA-

5    C"), completed a Mental Impairment Questionnaire form.  (Tr. at 639-42.)  Therein, Branum

6    stated that plaintiff's treatment began in 2016, at a rate of "every 2-3 weeks."  (Id. at 639.)  The

7    opinion provided plaintiff's DSM-IV evaluation, recounted plaintiff's various prescribed

8    medications, and provided Branum's clinical findings.  (Id.)  Ultimately, Branum opined that

9    plaintiff had marked and extreme functional limitations in several areas of functioning.  (Id. at

10   241.)

11        The ALJ acknowledged that Branum's opinion would "support" plaintiff's allegations.

12   (Id. at 23.)  Nonetheless, the ALJ afforded Branum's opinion "no weight," because Barnum was

13   "not an acceptable medical source."  (Id.)  Pursuant to the regulations applicable at that time, a

14   Physician's Assistant was not "an acceptable medical source," but instead an "other source."  See

15   Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014); 20 C.F.R. 404.1513(d) (Sept. 3, 2013)

16   ("other sources" include physicians' assistants).  "An ALJ may discount the opinion of an 'other

17   source,' . . . if she provides 'reasons germane to each witness for doing so.'"  Popa v. Berryhill,

18   872 F.3d 901, 906 (9th Cir. 2017) (quoting Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir.

19   2012)); see also Petty v. Colvin, 954 F.Supp.2d 914, 926 (D. Ariz. 2013) ("An ALJ is free to

20   discount testimony from other sources, but as the Commissioner concedes, he must give reasons

21   germane to each witness for doing so.").

22        Rejecting Branum's opinion because it was not an opinion from an acceptable medical

23   source is not a reason germane to Branum's opinion.  Instead, it is true of all opinions from other

24   sources.  And if this were permissible, an ALJ would never have to consider an "other source"

25   opinion.  The only other reason given by the ALJ for rejecting Branum's opinion was that it was

26   allegedly "inconsistent with progress notes showing claimant is stable on medication with intact

27   concentration and behavior."  (Id. at 23.)  That finding, however, is premised on the ALJ's

28   selective recounting of plaintiff's medical history and is belied by the evidence of record.

In this regard, the ALJ concluded that plaintiff's "symptoms are essentially controlled with medication management."  (Id. at 21.)  First, it should be noted that even assuming *arguendo* that the ALJ's characterization was accurate—and it is not—there is nothing inconsistent about a plaintiff having mental health symptoms that are disabling but nonetheless capable of being controlled by medication while not under the stress of working.  See generally Esselstrom v. Chater, 67 F.3d 869, 872-73 (9th Cir. 1995) ("the prognosis of chronic schizophrenia may well include periods between acute bouts in which symptoms, while controlled enough to permit life outside an institution, still prevent the patient from pursuing normal employment").  Second, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."  Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014)

Regardless, the ALJ asserted that while the "medical evidence shows some period of instability in October of 2015," and that "progress notes reflect that when claimant is off her medications she has an increase in symptoms," nonetheless when plaintiff restarted medication in August of 2016, plaintiff "was doing well with less paranoia."  (Id.)  The ALJ went on to note that "in November 2016 after her admission . . . [plaintiff] reported doing well with no suicidal ideation and memory and concentration intact on exam."  (Id. at 21-22.)  The ALJ's opinion attempts to evade detailed discussion of significant evidence through the vague references to "some period of instability" and plaintiff's later "admission."

In this regard, plaintiff began "cutting herself since age 12," as evidenced by "multiple healed scars on her arms[.]"  (Id. at 319.)  In December of 2014, plaintiff attempted suicide.  (Id.)  In October of 2015, plaintiff was hospitalized "on 5150" as a danger to herself after presenting "[b]oth suicidal ideas and intentions[.]"  (Id. at 319, 322.)  Thereafter, plaintiff was seen regularly for treatment and presented with symptoms that included visual and auditory hallucinations, delusions, fragmented thought, poor concentration, self-harm, psychosis, mood instability, depression, etc.  (Id. at 475, 476, 479, 492.)

////

6

In November of 2016, plaintiff was again hospitalized "on a 5150 for danger to self," as a result of "voices telling her to hurt herself." (Id. at 434.)  Plaintiff continued to attend therapy and attempt medication management.  Plaintiff tried, unsuccessfully, over a dozen medications to treat these impairments.  (Id. at 778.)  On December 12, 2018—the same day the ALJ issued the opinion—plaintiff attempted suicide by overdosing and was found to have "current cuts on her left forearm."[5]  (Id. at 30.)

The administrative record overwhelmingly supports Branum's opinion.  Moreover, plaintiff's subjective testimony—which as explained below the ALJ erroneously rejected—is also consistent with Branum's opinion and the objective evidence.  In the face of this evidence, the ALJ attempted to support the opinion by giving "significant weight to the State agency medical consultants" who did not examine plaintiff.  (Id. at 22.)  As defendant concedes, these nonexamining physicians "did not have the benefit of the entire record[.]"  (Def.'s MSJ (ECF No. 17) at 9.)  In this regard, their opinions were not consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

In this regard, the ALJ's opinion is based on legal error and is not supported by substantial evidence in the record.  Plaintiff, therefore, is entitled to summary judgment on this claim.

## II.    Plaintiff's Testimony

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

////

---

[5] Although this evidence was not available to the ALJ, it was submitted to the Appeals Council and considered in denying plaintiff's request for review of the ALJ's December 12, 2018 opinion. (Tr. at 2.)  "[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence."  Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012).

1
2
3
4
5
6
7

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

8
9

Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

10   Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks

11   omitted). "The clear and convincing standard is the most demanding required in Social Security

12   cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At

13   the same time, the ALJ is not required to believe every allegation of disabling pain, or else

14   disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112

15   (9th Cir. 2012).

16        "The ALJ must specifically identify what testimony is credible and what testimony

17   undermines the claimant's complaints."[6] Valentine v. Commissioner Social Sec. Admin., 574

18   F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,

19   599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other

20   things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

21   testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work

22   record, and testimony from physicians and third parties concerning the nature, severity, and effect

23   of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59

24
25
26
27
28

[6] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect. "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR 16-3p) (alterations omitted).

8

1    (9th Cir. 2002) (modification in original) (quoting <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792

2    (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the

3    record, the court "may not engage in second-guessing." <u>Id.</u>

4         Here, plaintiff testified to being "unable to work due to paranoia, anxiety, intrusive

5    thoughts, auditory and visual hallucinations, which occur daily." (Tr. at 21.)  The ALJ found that

6    plaintiff's medically determinable impairments could reasonably be expected to cause the alleged

7    symptoms, but that plaintiff's statements concerning the intensity, persistence and limiting effects

8    of those symptoms were "not entirely consistent with the medical evidence and other evidence in

9    the record for the reasons explained in [the] decision." (<u>Id.</u>)

10        However, "after a claimant produces objective medical evidence of an underlying

11   impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of

12   medical evidence to fully corroborate the alleged severity of [the impairment]." <u>Burch v.</u>

13   <u>Barnhart</u>, 400 F.3d 676, 680 (9th Cir. 2005); <u>see also</u> <u>Putz v. Astrue</u>, 371 Fed. Appx. 801, 802-03

14   (9th Cir. 2010) ("Putz need not present objective medical evidence to demonstrate the severity of

15   her fatigue.").

16        Moreover, "[a]n ALJ's 'vague allegation' that a claimant's testimony is 'not consistent

17   with the objective medical evidence,' without any 'specific findings in support' of that conclusion

18   is insufficient for our review." <u>Treichler v. Commissioner of Social Sec. Admin.</u>, 775 F.3d 1090,

19   1103 (9th Cir. 2014) (quoting <u>Vasquez v. Astrue</u>, 572 F.3d 586, 592 (9th Cir. 2009)).  "This

20   boilerplate statement encourages an inaccurate assessment of a claimant's credibility and also

21   permits determination of RFCs that are inconsistent with truly credible testimony.  The approach

22   taken by the ALJ was inconsistent with the Social Security Act and should not be used in

23   disability decisions." <u>Laborin v. Berryhill</u>, 867 F.3d 1151, 1152-53 (9th Cir. 2017).  This is

24   because "'[s]uch boilerplate language fails to inform us in a meaningful, reviewable way of the

25   specific evidence the ALJ considered in determining that claimant's complaints were not credible.

26   More troubling, it appears that the Commissioner has repeatedly been using this same boilerplate

27   paragraph to reject the testimony of numerous claimants, without linking the conclusory

28   statements contained therein to evidence in the record or even tailoring the paragraph to the facts

9

1   at hand, almost without regard to whether the boilerplate paragraph has any relevance to the
2   case.'"  Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012) (quoting Hardman v. Barnhart, 362
3   F.3d 676, 679 (10th Cir. 2004)).

4       Nonetheless, as recounted above, the medical evidence and other evidence in the record is,
5   in fact, consistent with plaintiff's testimony that she is unable to work due to paranoia, anxiety,
6   intrusive thoughts, and auditory and visual hallucinations.  Accordingly, the court finds that the
7   ALJ failed to offer a clear or convincing reason for rejecting plaintiff's testimony.

8   **III.    Obesity**

9       Plaintiff also argues that the ALJ failed to consider the effect of plaintiff's obesity on
10  plaintiff's mental impairments.  (Pl.'s MSJ (ECF No. 15) at 11.)  The ALJ must consider a
11  claimant's obesity at steps two through five of the sequential evaluation.  SSR 02-1p, 2002 WL
12  34686281 (2002).  Moreover, the ALJ must also consider obesity in combination with the
13  individual's other impairments.  Id.  Social Security Rule ("SSR") 02-1p directs that "[the ALJ]
14  will not make assumptions about the severity or functional effects of obesity combined with other
15  impairments."  Id.  Instead, "[the ALJ] will evaluate each case based on the information in the
16  case record."  Id.; see also Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003) ("The ALJ was
17  responsible for determining the effect of Celaya's obesity upon her other impairments, and its
18  effect on her ability to work and general health, given the presence of those impairments.").

19      Here, the record evidence that plaintiff's obesity impacted plaintiff's mental impairments.
20  (Tr. at 397.)  The ALJ found that plaintiff's obesity was a severe impairment.  (Id. at 17.)  And
21  the ALJ asserted, without explaining, that plaintiff's obesity had "been taken into account
22  pursuant to Social Security Ruling 02-01p" by limiting plaintiff to "medium work."  (Id. at 22.)

23      The ALJ, however, did not address how plaintiff's obesity effected plaintiff's mental
24  impairments.  See Celaya, 332 F.3d at 1182 ("The ALJ was responsible for determining the effect
25  of Celaya's obesity upon her other impairments, and its effect on her ability to work and general
26  health, given the presence of those impairments."); see also Martinez v. Astrue, 630 F.3d 693,
27  698-99 (7th Cir. 2011) ("It is one thing to have a bad knee; it is another thing to have a bad knee
28  ////

10

supporting a body mass index in excess of 40.  We repeat our earlier reminder that an applicant's disabilities must be considered in the aggregate.").

Moreover, the ALJ's decision made no mention of plaintiff's obesity at step three of the sequential evaluation in determining whether plaintiff's impairments met or equaled a listing impairment.  (Tr. at 19.)  While obesity "is not a separately listed impairment, a claimant will be deemed to meet the requirements if 'there is an impairment that, in combination with obesity, meets the requirements of a listing.'"  Burch, 400 F.3d at 682.  And SSR 02-1p provides that when a plaintiff "has the medically determinable impairment obesity that is 'severe'" the ALJ "may find that the obesity medically equals a listing[.]"  2002 WL 34686281, at *4; see also Bacom v. Colvin, No. 2:12-cv-0790 AC, 2013 WL 5372865, at *4 (E.D. Cal. Sept. 25, 2013) ("An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.")

Ultimately, an "ALJ must provide a discussion of the evidence and an explanation of reasoning for his conclusion sufficient to enable meaningful judicial review."  Diaz v. Commissioner of Social Sec., 577 F.3d 500, 504 (3rd Cir. 2009) (quotation omitted); see also Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) ("The ALJ's decision regarding the applicability of Listing 1.04A is devoid of reasoning. . . .  This insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings."); Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) ("We hold that, in determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments.")).

For the reasons stated above, the court finds that the ALJ failed to properly consider plaintiff's obesity throughout the sequential evaluation and that plaintiff, therefore, is also entitled to summary judgment on this claim.

////

////

////

11

**CONCLUSION**

With error established, the court has the discretion to remand or reverse and award

benefits. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989).  A case may be remanded

under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative
> proceedings would serve no useful purpose; (2) the ALJ has failed to
> provide legally sufficient reasons for rejecting evidence, whether
> claimant testimony or medical opinion; and (3) if the improperly
> discredited evidence were credited as true, the ALJ would be
> required to find the claimant disabled on remand.

<u>Garrison</u>, 759 F.3d at 1020.  Even where all the conditions for the "credit-as-true" rule are met,

the court retains "flexibility to remand for further proceedings when the record as a whole creates

serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social

Security Act." <u>Id.</u> at 1021; <u>see also</u> <u>Dominguez v. Colvin</u>, 808 F.3d 403, 407 (9th Cir. 2015)

("Unless the district court concludes that further administrative proceedings would serve no

useful purpose, it may not remand with a direction to provide benefits."); <u>Treichler</u>, 775 F.3d at

1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the

proper approach is to remand the case to the agency.").

Here, plaintiff requests that this action be remanded "for additional proceedings so that it

can be fairly adjudicated." (Pl.'s MSJ (ECF No. 15) at 16.)  That request will be granted.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 17) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for further proceedings consistent with this order; and

////

////

////

12

5. The Clerk of the Court shall enter judgment for plaintiff and close this case.

Dated:  September 2, 2021

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DLB1\orders.soc sec\salazar2557.ord